Mr. Chief Justice, and may it please the Court, there is no dispute that if Virginia, like Nevada, required severance under the circumstances here, issue preclusion would be available with respect to the second trial. That much is dictated by Turner v. Arkansas. Sotomayor, I'm sorry, why do you say that? Meaning, what Nevada says is, no severance if both parties consent. So why isn't that exactly like Nevada? If you hadn't consented, severance would have been required, correct? So my understanding of Nevada law, and just without getting into the weeds of exactly what any particular other State law than Virginia requires, but all I'm saying is, if a State law required severance under the circumstances here without respect to what the parties agree. Sotomayor, well, it requires severance unless both parties agree. That's what Virginia law says, Your Honor. Right. Right. So I'm distinguishing Virginia law from a State like Nevada or a State like Arkansas and Turner that just simply demands severance, and it's not up to the parties. I don't know why that's not the same. Oh, we think it is the same, Your Honor. So what I'm trying to say is, is that in a State that demands severance, all agree and even my opponents agree that issue preclusion would be available. That's Turner. That's Turner. All right. So Turner says that. Why is this any different? It says. I don't think it is. Okay. I don't think it is. And so the only question in this case, though, is whether the fact that Virginia law, as you say, Justice Sotomayor, allows both parties to agree to have a joint trial instead of the default of severance, whether that makes a difference. And we think. Well, to sort of bracket this problem, what about a jurisdiction like the U.S. courts where severance is not required, where there says nothing about severance? I think there's some variance, Your Honor, across the Federal courts. But to take your question of one like. All right. Well, take the model of a jurisdiction that says nothing about severance of this claim, of charges like these. Well, we think the answer there would be the same as well, but I would concede it would be a slightly harder case. But the point, and there are two distinct reasons why, consenting to severance in this situation, or even, Justice Alito, in the hypothetical you describe, should not waive the right to issue preclusion. First, the issue preclusion is a distinct right from the right against multiple trials. And simply consenting to separate trials is not inconsistent with later invoking issue preclusion. And the second. Ginsburg. Is that distinction that it's not like claim preclusion, more academic than real, that is, in this case, suppose you're right and there can be no retrial of the breaking and entering or of the theft. What's left? What would a prosecutor, could a prosecutor realistically put on any case for the felon in possession charge? I think, Justice Ginsburg, it might be a challenge in this case, but it is certainly not theoretical in every case. And not even necessarily in this case, depending on how the State would set out to prove the gun charges in the second trial. And I think this is brought out most clearly in the Wittig opinion that Judge Gorsuch, then Judge Gorsuch, wrote for the Tenth Circuit. And that opinion makes it very clear that what issue preclusion provides is the right, as the Court put it there, to be tried in a particular way. And so in some circumstances, like the Ash case itself, that is functionally going to bar the second trial. But in other cases, like the Wittig case, there will be the opportunity for the government to go forward in the second trial. And that alone defeats the other side's waiver argument, because inconsistency is required for waiver by conduct. And that's the holding of Jeffers and all the other double jeopardy cases they cite. Alito, but there is no issue preclusion clause in the Constitution. There's the double jeopardy provision of the Fifth Amendment, which says that no person shall be subject for the same offense to be twice put in jeopardy of life or limb. So isn't Ash so doesn't Ash simply provide one definition of the same offense? Yes. That's what the Court said in Yeager. And I think to bring that out a little more fully, what Judge Friendly said in the Kramer opinion, and which we think is correct, is when somebody is tried for technically a second crime, but one which depends upon proving allegations the first jury necessarily rejected because it arose from the same transaction and the jury decided those issues against the prosecution, then you are functionally being tried for the same offense. But in Jeffers, the Court held that when the second trial involves the same offense under the Blockburger test and the defendant consents, the second trial can go forward. So why should it not follow that when the defendant consents, if in fact that is done, and the second trial involves the same offense under Ash, this rule should be the same? Well, for two reasons, Justice Alito. The first is because at that level of generality, I see your point, but if you look at the specific right involved, in Jeffers, the defendant requested two trials and then tried to stop the second trial. So that is fundamentally taking inconsistent positions. Here, Mr. Currier simply consented to separate trials. He didn't object to the second trial as such. He just said you cannot try me in the second case by reproving, by trying to prove allegations that were rejected in the first trial. Alito, but wouldn't it be odd to say that the defendant in Jeffers has a lesser double jeopardy right when what he is asserting is consistent with what the double jeopardy clause was originally understood to mean? Whereas, in a situation like this, what the defendant is asserting is something that was developed by our cases in the modern era, but was not what the double jeopardy clause was originally intended to mean. So when the defendant is asserting the core double jeopardy right and says I want a second trial, there can be a second trial. But when the defendant is asserting this new elaboration of the right, there can't be a second trial. Isn't that rather odd? We don't think so, and let me leave aside for the moment the question whether Ash is true to the original understanding and just distinguish Jeffers in this way, which is Ash deals with the inviolacy of acquittals. And that, Justice Alito, is the molten core of the double jeopardy clause, the right not to be tried again for something of which you have been acquitted. And so what the Court said in Ash and what Judge Friendly said in Kramer before it was, the core of the double jeopardy clause does indeed preclude retrials following acquittals, and to have that guarantee, that historical guarantee, have meaning in modern times, it needs to apply to the circumstances here. Kagan. Kagan. First, you had a second point you wanted to make, and then I have a question. Fisher. But I just wanted to hear your second point. Fisher. I'll get it on the table. The second, and this is the second point to Justice Alito as well, which is the competing interests involved in a case like this as compared to Jeffers are dramatically different. And if I could give one more sentence on that, the reason why is because here we are dealing with an acquittal as opposed to a conviction or simply a mistrial. And on the other hand, because we are dealing with an acquittal and because we are just imposing issue preclusion, the prosecution has a full and fair opportunity to prove all of its charges. And so that's what's being taken away from the prosecution in cases like Jeffers and why the Court says it's not fair. But here, the prosecution by definition has an opportunity to prove all of its allegations and the second trial is precluded only to the extent that the prosecution would try to retread that ground. Kagan. Here's my question. Suppose that in this case the Court had made very clear to your client the consequences of agreeing to sever. In other words, suppose that there had been some kind of colloquy and the Court had said, you know, if you agree to this, one of the things you're agreeing to is that you won't be able to get issue preclusive effect. Would that be perfectly fine? Well, first of all, Justice Kagan, it would not be okay under Virginia law, but setting that part aside. I think that would be a very different question for two reasons. One is you'd have express waiver in that hypothetical if Mr. Currier agreed to that procedure. And here, I think all agree this is a waiver by conduct case. So what you would have there is an unconstitutional conditions question, and I think the Court, those are very hard questions and depend very much on the facts. I mean, I guess the reason I ask this is because it seems to me that maybe the problem in this case has to do with the fact that people just don't know what the background rule is, and that we could establish a background rule almost whichever way we establish the background rule, and people would then be aware of the consequences going forward when they agree to sever. Well, as I said, if you establish the background rule in our favor, I think everything is fine. If you were to establish the background rule the other way, or if a State were, if a State were to, you'd have an unconstitutional conditions question. Kennedy, is it clear that under Virginia law, there could not be a joint trial? There could be a joint trial, Justice Kennedy. Is it clear that severance had to be ordered? So the Hackney case, which is cited in the briefs, lays out Virginia law, and what it says is the trial court must sever unless both parties agree to joinder. And here, both parties consented to the default severance procedure. That's at JA 47 and 48. But isn't that really set up a waiver? Isn't that something like a waiver if he doesn't agree? Well, we don't think, we don't think simply agreeing to what the State wants to have in the first place, both as a matter of State law and the prosecutor in this case, should saddle the defendant with waiver by conduct. But if you think, if you're still not persuaded by that, I would give you the two other reasons I gave Justice Alito, which is to say waiver by conduct can be established only by inconsistency of positions, and there's no inconsistency in Mr. Currier's positions. And the equities or the competing interests are completely different than all of the double jeopardy cases in which they find waiver. It's important to recognize, Justice Kennedy, all the other sides' cases that deal with waiver or waiver by conduct or whatever the Court calls it in those cases, all deal with the right to multiple trials. They all deal with people who were convicted or there was a mistrial. They don't have a single case, and the Court has never held, that the right to the preclusive effect of an acquittal in any form, whether it's claim preclusion or issue preclusion, can be waived. And so there are no cases where there are bifurcated trials, in other words, the jury is the same jury, but they try the breaking and entering first and the felon in possession second. And if so, would issue preclusion apply there as well? So there are no cases from this Court dealing with bifurcation. The Indiana amicus brief describes the fact that some States actually handle this situation by bifurcation, and we think the outcome there and the rules there would be the same as in Severance. Sotomayor, what would happen in those bifurcated trials where it happens routinely in the Second Circuit? Same jury, you try the breaking and entering first or the robbery first, and then you try the felon in possession. Would double jeopardy bar the trial of the gun once there's been a conviction on the first charge, on the robbery or the breaking and entering? Not if there's a conviction, Your Honor, but if there's an acquittal. Under Jeffers. Under Jeffers. But what you're saying is if there's not, if there's an acquittal, that issue preclusion would bar the second trial. That's right. And I think maybe it's. That's Turner. That's Turner. It's also Yeager. I think it's important for the Court to understand how close this case is to Yeager. By the way, it was the government who went to the defendant and said, consent to or agree to the severed trials? So my understanding is, is that during pretrial proceedings, the government or, I'm sorry, the State, the Commonwealth, reached out to the defense and said, it looks like we have to sever in this case. Do you agree? The defense said yes. And so that's reflected, as I said, at pages 47 and 48. And just so we state the default rule clearly? To have a joint trial, both parties have to agree. Otherwise, law mandates severing. Correct. And that's clearly in Hackney. But if I could return to. I thought that under Powell, if you're convicted on a count that is inconsistent with counts on which you've been acquitted, that that's still a conviction. That is, Your Honor. I'm glad you asked about Powell, because it brings me back to Yeager. And so let me distinguish the two cases. What Powell says is that if a jury simultaneously convicts and acquits on counts that are in an inconsistent manner, we accept that verdict in all of its form, as you know. And the reason why is because the acquittal cannot be taken to establish any facts against the prosecution. But what Yeager holds is that even in a circumstance where the prosecution brings. Just to pause, why is that? Because it's out of respect for the jury, Your Honor. That's the thread that runs through these cases. And Powell, the Court said, the jury might have been exercising mercy, as is its right. And so we're not going to upset the acquittal any more than we're going to upset the conviction in the other jury. Roberts. So we have respect for the same jury, but not for two different ones? And the same under the same indictment? No, but it brings me right back to Yeager. So we haven't had the second jury at the time issue preclusion is invoked. And so remember what happened in Yeager. The prosecution brought all of its charges at once. The jury came back with acquittals on some counts and hung on the other counts. So the government tried to prosecute everything at once, was unable to get a verdict out of the jury on some counts. And what the Court said there is that when we can look at an acquittal alone without a conviction and say that acquittal establishes certain facts against the prosecution, issue preclusion applies. So really — Suppose you prevail in this case. Would a State then say, okay, what we'll do is we'll just try both of them together and the jury will hear all the evidence about the felony? Don't — do you — are you happy with what you wish for here? Justice Kennedy, that's not been the experience in States that have our rule. So as we lay out in our — at a footnote in our reply brief, Florida and Iowa are two States that have had our rule for decades, and there's been no change in the way severance happens. Why? That's — I mean, that's the part, the point that was a very practical point. When I'm a judge on the First Circuit, I would say in multiple party, multiple, you know, gang cases and so forth, one of the most common things was a defendant would appeal either saying it should have been a sever, he should have been severed if he wasn't, or he shouldn't have been if he was and so forth. Very, very common. And so what was worrying me is that the prosecution, if we adopt something like you want to be severed here, at least as to some of the counts, the prosecutor thinks, if I agree to that, I don't know what's going to happen. You know, we'll get some kind of a verdict in this first case, and all I know in the second case is that his lawyer is going to argue that there are various aspects of it that are inconsistent with going ahead with this, and we're not going to be ahead with it. At worst, there will be some appeals. It's going to be a nightmare. And the best thing for me to do is just say no. And that is exactly what is worrying me. And you have an alternative. You can say treat the severance as if it were a single trial, and just as you say he waived the double jeopardy matter when he appeals, so you could say he waived it when he asked for the second trial, you know, when he asked for the separate trial. I have a problem with theirs, too, but I'm just saying that this is the problem I had with yours. So you say, well, it hasn't worked out that way in Florida. Hmm. Fisherman. Well, as I say, to the extent we have empirical evidence, it supports my position. Why wouldn't it work out that way? Let me tell you two reasons, Justice Breyer. So the first is, remember why severance is the default rule here in the first place. It's because of the confounding influence that prior convictions have on a jury's ability to reach accurate verdicts. And prosecutors, just like defense lawyers, have a very strong interest in accurate verdicts out of criminal trials. And secondly, even from a resource management standpoint, which sounds to me more like what you're thinking about here, the prosecution may well agree to severance for a couple of reasons. One is because if the prosecution gets a conviction, the prosecution can choose to try its stronger claim first. If the prosecution gets a conviction, the prosecution can do just what the State suggested it was going to do here, which is just drop the second charge, because it's a less important crime and it would run concurrent. I'm worried about other, that there are other situations. And the most common claim was, I should have been severed and I wasn't, or vice versa. They never win. I mean, the claim hardly ever wins. It's really left to the trial judge. And so I recall that. Well, we don't have a problem leaving severance decisions to trial judges according to the various rules across the country. All we're saying is that the defense is going to take the government's position against and throw in a very big trial with 19 defendants, some guy who happened to be on the corner, you know, and the jury isn't going to distinguish among them and you see where I'm going. Remember, though, Justice Breyer, I don't think prosecutors are going to necessarily act that way, because they have an interest in justice just like the defense does. And secondly, if they play it out in their minds, if they get a conviction in the first case, they're very likely to just drop the second case, or if the second case is also important, the defense at that point is likely to plead, because he's already been to trial on roughly the same evidence. Sotomayor, don't we have a case that says this issue preclusion is only between the same parties? Yes, you do, Justice Sotomayor. And we have a case that says if another defendant gets an acquittal, that doesn't help you. That's Standifer, that's right. And so, Justice Breyer, I think is, to the extent you're asking about other defendants, that's a separate problem. But I think you're also asking about same defendants. And let me just continue to play that out for you. So even when the conviction happens, it's going to be very unlikely that there's going to be a drain on resources or any problem. Remember, an acquittal in the first case is going to be very, very rare, as they are in criminal cases. When an acquittal happens. I'm sorry. Oh, I'll just finish my sentence. When an acquittal happens, the prosecution then may well drop the second charges. But if the prosecution pushes ahead, that's exactly what the double jeopardy clause is concerned with. Is there anything to indicate that the result would be different, would have been different in Jeffers if the first trial had been an acquittal? Well, the Justice who wrote Jeffers, Justice Blackmun, signed on to Green as it was later on, saying, yes, it would have been different. He said it later. But the double jeopardy clause doesn't draw a distinction between convictions and acquittals, does it? Well, in case after case, I think Scott is the best example I could give you, where Chief Justice Rehnquist went on at great length about how there's a special place for acquittals under the double jeopardy clause, and special rules apply to acquittals. Just take, for example, an appeal for sufficiency of the evidence. If an appellate court finds that there's insufficient evidence and therefore the defendant should have been acquitted, he cannot be retried. On the other hand, if the appellate court finds that simply there was some other error in the case, he can be retried. So the double jeopardy clause does already distinguish in multiple ways between acquittals and convictions. Well, but not entirely. The distinction doesn't hold up in Bravo-Fernandez. Well, Bravo-Fernandez, as I said, is a case like Powell. And so let me be clear what I mean when I say acquittal. What I mean by an acquittal is not simply the piece of paper of an acquittal, but an acquittal that we can say establishes an issue of ultimate fact against the prosecution. And so when we have an acquittal like that, which is what we had in Yeager, and which was distinguished from the situation in Powell and later distinguished from Bravo-Fernandez, then that acquittal has issue preclusive effect. And the Court has never held to the contrary on those facts. And that are clearly our facts here. And it's clearly Turner as well, a case where the prosecution is forced to wait for its second case, for the second counts to be tried. But as soon as a jury comes back with an acquittal, the Double Jeopardy Clause, and indeed the Constitution in general, vests that acquittal with special inviolacy. And this goes all the way back to Justice Story's commentaries where he said that acquittals have to be the purity and dignity of acquittals needs to be respected, and that is a core purpose of the Double Jeopardy Clause. Kennedy, I'm still interested in what happens if you prevail. Why wouldn't a prosecution have the option then to try the felon in possession charge first? Sure. We don't have a – the prosecution is the plaintiff. And so the prosecution presumably can choose which case it wants to try first. All we're saying, Justice Kennedy – Would you do that in a bifurcated trial? Pardon me? Would you do that in a bifurcated trial? Well, I think you might have a challenge – if your bifurcation dealt with the same jury, once you got the prior conviction out in front of the jury, I think then you might have a problem under State law in dealing with prior convictions. But in general, Justice Kennedy, remember, this question is going to come up in scenarios that don't deal with prior convictions. And this brings me back to Justice Alito's question, I think. The other side's position here is not just that in a case like this, issue preclusion wouldn't be available. The other side's position, I think, leads inactively to the conclusion that if there were a greater and lesser offense and the first trial was for the lesser offense and the defendant was acquitted, that in this situation the defendant would not even be able to invoke the right to issue preclusion. And that, I think, is a highly unjust result. And so the prosecution – Ginsburg, the issue preclusion was taken over into the criminal context in Ashe, but it originated in civil cases. Is there any difference between issue preclusion as it would apply in a civil case and in a criminal case? Well, not for purposes of this case, Justice Ginsburg. As the Court wrote in Bravo Fernandez, you have to be careful in criminal cases when you decide what issues of ultimate fact the first jury decided because of the nature of general verdicts in criminal cases. But as to the scope of issue preclusion, once you establish what issues of ultimate fact were decided against the prosecution in the first case, it's exactly the same rule carried out. Mr. Pritchard, are we confident that civil issue preclusion would apply in circumstances like these where a party consents to a bifurcated trial, or might it be more law of the case where it's more equitable? I know you cited an old Tenth Circuit case suggesting issue preclusion might apply here, but it's a malleable doctrine even in the civil context. And when a party consents to two trials, it may or may not apply. In law of the case, if it's the same jury and bifurcated, it very well might not. So what do we do about that? So let me say two things, Justice Gorsuch. First, we looked as hard as we could, and we're only able to scrape out a few cases. And the other side we cited what we found. The other side, I don't think disputes, you can ask them, but I didn't take them to dispute our representation based on civil law, the civil side of things. And also, I'd point you to Judge Friendly's opinion in Kramer, where on page 917, he surveys older cases from this Court that are civil. In those cases, the Keokuk case is one. But you agree in civil cases, or maybe you wouldn't, tell me if I'm wrong, but in civil cases, it's not a foregone conclusion that issue preclusion would apply in these circumstances. It might be law of the case, and it might be subject to some consideration about the defendant's consent. I mean, you'd agree that your research did not prove that this would be obviously precluded, even in a civil matter. Well, I'll just say our research encumbered limited authority to that effect, so there's not an absolute answer. Fair enough. But we think it should apply for all the same reasons we'd be saying here. But I would just add to that, though, if there's any doubt, that the reason for applying issue preclusion is enhanced in the criminal context when you have the special nature of an acquittal. And that's the reason why it's not a foregone conclusion. What do we do about the fact that claim preclusion in the criminal context isn't as robust in the criminal context under Blockburger as it would be in the civil context? We use a transaction test in the civil context and an elements test in the criminal context. We shouldn't be concerned that it's anomalous that we'd be creating an issue preclusion doctrine that may be more robust than in the civil context here, even though in claim preclusion it's less robust? Well, I think, Justice Gorsuch, it's perhaps helpful to separate out the substantive boundaries of the doctrine, whether it be claim preclusion and issue preclusion, from the question whether they can be waived. And so we leave the substantive boundaries of issue preclusion and obviously claim preclusion where we found them. But as to waiver, we don't think it's anomalous to say that an acquittal, the preclusive effect of an acquittal is harder to waive than the right to claim preclusion for the competing interests I've mentioned and because of the lack of inconsistency. If I could reserve my time. Roberts. Thank you, counsel. Mr. McGuire. Mr. Chief Justice, and may it please the Court. The difficult question presented in this case can be answered by applying the logic of three principles this Court has already embraced. First, when a defendant agrees to have multiple trials, he gives up his right to argue that the later trial is barred based on double jeopardy. Sotomayor, how can you call this an agreement? State law says you're entitled to severance unless both of you consent to join them. So under State law, they have an absolute right to severance. So they're agreeing to what the law gives them? I have three responses, Justice Sotomayor. The first is that the question presented to the Court in this case doesn't take account of Virginia's specific law. It's just when a defendant consents to have sequential trials. Sotomayor, that begs the question. But if the Court does go beyond sort of the question presented and look at Virginia law here, the facts in this case, and you can see this in the November 20, 2013, brief in support of the motion in Limine. And the record here isn't fulsome on the point, but this is from the defendant himself. The way this case actually ends up being severed is the defendant in court with a different Commonwealth's attorney represents that the case needs to be severed. So in some sense, there's a motion to sever under State law. Well, he could have agreed to go forward to the joint trial. Now, that's the question. Can you agree to give something up because you're going to be damaged if you don't? I mean, why are you conditioning a defendant's right to separate trials on him giving up the prejudice argument of a joint trial? Well, Justice Sotomayor, it's entitled to a separate trial. Why does he need to give it up? Well, so what Virginia has done is conferred an extra benefit on criminal defendants in cases like this where they can have the choice of having separates. It's not a benefit, it's a right. Well, it comes from an interpretation of a State judicial rule of procedure by the court of appeals. The Virginia Supreme Court has never said that this is actually what is required as a matter of Virginia law. So in a sense, it's unsettled, but it's an extra benefit. So there's no right to an appeal, but we have said no constitutional right to an appeal. You're entitled to it statutorily. But we've said it's unfair, a Hobbesian choice, to force a defendant to give up his right to appeal to retain his double jeopardy rights. Well, that's So why is it not a Hobbesian choice to be forced to give up the prejudice of a joint trial in order to retain your double jeopardy rights? Well, I think Your Honor is talking about Green, the case there. And so if we look at Green, what the court there said was you do, in fact, give up your double jeopardy right with respect to the conviction that you appealed. Green just said you don't give up your double jeopardy right with respect to the acquittal that was implicit in the case. Well, you've already been tried. Right. And so in that case, there was no act that we would say constitutes waiver before the appeal. The appeal doesn't waive the acquittal that predates the appeal, but the appeal waives the conviction piece of that case. Here, we don't think there's a Hobbesian choice at all, because the court has always looked at the prejudice associated with prior felony status as a matter of evidentiary rule. And so there's not a constitutional due process argument on the other side? The State has made a different determination. The State has said that presumptively these charges are prejudicial if they're tried together, and presumptively we won't permit it. Well, what Hackney says ultimately is that Virginia wants to give extra protections to criminal defendants in this context to allow them to have control over the proceedings, which is what this Court has generally speaking looked to. No, but that's not true, because it gives not just the defendant but the State the right. The defendant can't do it by himself or herself. The State has to agree to it as well. Well, there's no suggestion in this case that the State would not have wanted a joint trial. The presumption in Virginia didn't ask for one. What it said to the defendant was, we have to sever if you agree, and the defendant said, yes, we have to. That's the representation based on Hackney from the Commonwealth's attorney. If the defendant, for example, was going to testify at the trial and he knew that his prior status was coming in anyway, he may very well prefer to have a single trial, and he could have brought that forward to the Commonwealth attorney's attention, and there's no sign that they would have said no to that procedure. And so what we think under Hackney is you look at what the defendant himself did, hear the defendant consent it. In the case where the defendant wants to have a joint trial, but the Commonwealth forces severed trials, we wouldn't argue waiver by conduct in that case. Kagan. Well, Mr. ---- I'm sorry. It's complicated, and I keep trying to simplify it, and tell me what's wrong with this simplification. Let's take two examples, or three. Example one, the defendant is accused of two crimes, A and B. He is tried first on A and acquitted. Then, a few months later, the prosecution decides B. Now, nobody objects, do they? Two totally separate trials, no nothing, that this issue preclusion thing applies in B. However it applies. I mean, however it applies, it applies in B. Is that right? That's right, Justice. Okay. Now, let us take example two. Example two is they decide to try both A and B in the same trial. Now, here, if he's found guilty of one, even if it's totally inconsistent, the verdict stands, right? That's right. And the reason it's right is because this is, in a sense, allowing a little bit of jury nullification in. We think, well, the jury thinks that's a fair thing to do. Okay? Now, if those are the two examples, we have here example three. It is a different jury, but it once was not. So since it is a different jury, our reason for allowing the inconsistent verdicts in my example no longer exists. This was not a jury that saw the whole thing. It was a jury that only saw this case, and therefore, let him assert the double jeopardy, whatever it is, because our reason for not doing it isn't there. Now, of course, we'd have to have a corollary, unfortunately, for what did you call it? The bifurcated jury, because there it is, the same jury. I don't know what to do about that one. But the the the in these three, see, my three examples, I just say, is the reason for example one there in our case answer no, so treat it like two separate draws. And by the way, if the prosecutor has a problem, he can always insist on a written waiver if the defendant really wants the separate trial. All right. So what's wrong with my examples? So, Justice Breyer, I think your the way you approach that hypothetical is to bracket this case with the issue preclusion cases, Powell, Bravo, Fernandez, and Yeager. What we think the right set of cases for the Court to look at in deciding the issue here are the multiple trial right cases where you don't necessarily look at the acquittal that came up in the middle of the trial, what you ask, or in the split proceedings here, what you ask is did the defendant take an act before the acquittal arose that presupposed he would have two trials. And so here, under and consistent with all the precedent on mistrials or motions to dismiss, you have a case where the defendant agreed to have the prosecute agreed to have two trials ever before he was acquitted, and he necessarily undertook the risk of inconsistent versus. Kagan. Sotomayor, I mean, it's one thing to say, as we've said many times, that when you say, I want two trials, that what you've given up is the right to object about two trials, right? That really is inconsistent. If you're insisting on multiple trials or preferring multiple trials, then you can't assert your right against multiple trials. But that's not this case. Somebody can say, I want two trials, and still have it in his view that in that second trial, normal issue preclusion principles will apply. So sometimes that will prevent the second trial, but sometimes it won't prevent the second trial because the government can prove its case another way. And so there's no inconsistency of the kind that exists in claim preclusion in this kind of case, is there? Well, there is, Justice Kagan, because issue preclusion has to be understood as part of the three core protections under the Double Jeopardy Clause. And so the hypothetical that you spun out there suggests that issue preclusion does serve to borrow only evidence in some cases and not necessarily preclude a trial. It's important to note that in none of this Court's cases addressing issue preclusion has that ever been the result. Well, I don't understand what that means. The Solicitor General says that as well in its brief, and I didn't understand that either. Because surely the government doesn't mean that if the government couldn't prove their case another way, the government could try to do so, right? I mean, if the government could prove their case another way, then the trial isn't barred, right? The trial goes forward with the government proving its case another way. Well, we would say, Justice Kagan, that just means issue preclusion doesn't apply at all in that case. Because when issue preclusion applies in the criminal context, it serves only to bar the trial. And Dowling really is a good example of this, dealing with 404B identification evidence. In that case, the defendant had been acquitted there. Kagan. Kagan. But whatever you call it, the point still stands that the defendant is in a position where it's perfectly consistent to say two things. Yes, I would like two trials, and in that second trial, I expect that issue preclusion principles will apply. That's very different from the kind of inconsistency that we've pointed out in the past, where the government can't – where the person can't say on the one hand, I want two trials, and say on the other hand, I don't want two trials. Well, Justice Kagan, I think we're maybe speaking past yourself just a little bit. Let me try again to be a little bit clearer, which is our position is that once the defendant says in that second trial I want to argue issue preclusion, issue preclusion principles would apply to limit the government's theories. Issue preclusion doesn't do that, and that this Court has never held that to be the case. In fact, in the briefing in Ashe, the briefs disclaimed that they were ever asking the Court for a rule on that fashion. So what we would say is that when you raise issue preclusion, when you say I want to raise that to bar the – to do something related to the Double Jeopardy Clause, the only thing you can be saying is that the second trial cannot go forward at all, because the same ultimate fact from the first trial has to be proven in the second one. Well, and the Commonwealth could have proved the second offense without making any reference to the breaking and entering of the residence or the theft of the safe. They could have called Wood and they say, where were you on such and such a date, such and such a time, I was by the river, and what were you doing? I had a safe with guns and money, and was – were you by yourself? No, a Petitioner was with me, and what did he do? He took out the guns and he was possessing the guns. They could have done that. But I bet if they had done – I don't think Mr. Fisher would say that that would be okay. I think he would say that would still be barred by – by issue preclusion. And if that is the case and the defense understood at the time when they agreed to the second trial that the prosecution would not be able to prove the second offense in that way, then I don't see why they didn't understand the consequences of agreeing to the second trial with respect to issue preclusion to exactly the same extent as they understood the consequences with respect to a second trial in the Jeffers situation. We think that's exactly right, Justice Alito. And it's also important to explain why having an evidentiary rule here would be problematic in a number of ways. For example, here one piece of evidence that comes up a lot from my friend on the other side is the cigarette butt with the DNA that was found in the car. And they say, well, that didn't get in to evidence at the first trial, but it was introduced at the second. So in some sense, you're seeing the dry run problem. But it's not clear why that evidence wouldn't come in anyway in the second trial. It's not linked necessarily to the burglary. It's just a cigarette butt in the truck. And so it's not clear how this would actually work in practice to a very real degree. But we do think that the Court should just link issue preclusion directly with the multiple trial right. To one of the questions earlier, it has not been understood generally as normal civil issue preclusion in this context. And if you look at the various opinions, including then Judge Gorsuch's opinion in Wittig or Kramer, what you see are really two different strands of issue preclusion analysis that go on in Federal courts in particular. One is under the Double Jeopardy Clause where it would serve to bar a second trial. And another is sort of a Federal judicial – Federal oversight of the judiciary as coming under Oppenheimer. Ginsburg. Ginsburg. Can we clear up one thing about this case? The Virginia Court of Appeals, which has written the dispositive opinion, thought that overreaching was an ingredient of issue preclusion in criminal cases. I see nothing in our cases that requires overreaching in order to apply issue preclusion. Justice Ginsburg, we agree that the Court of Appeals looked at prosecutorial overreach as an important component of the Double Jeopardy Clause. We are not suggesting that the defendant needs to prove prosecutorial overreaching in order to assert issue preclusion. But we think the best way to look at the concept in this case generally is the way Johnson framed it, which is that issue preclusion really applies where the State has made an effort to prosecute you seriatim. And so where the defendant has the choice to consent and, in fact, does consent, you don't have that situation. The State isn't the one imposing the second trial on you, as much as you have agreed to have that procedure. And to say the State and the Constitution, it says, shall not be subject to. So, I mean, can we do this, which is a more – I'm trying to get my hands on this case, which is filled with complexity. Just say, look, Justice Gorsuch asked this question. We're not certain, we don't have to decide the contours of issue preclusion. Isn't there enough agreement among the lower courts and this Court that there is something to it in some cases? And then say, whatever that is, we're leaving it, you know, to the research and so forth. But whatever that is, the question here is whether the doctrine, in some form or other, applies when there is the second trial as a result of the Virginia law or as a result of the waiver or as a result of whatever. Can we just do that? Well, that's the question the Court granted certiorari on, Justice Breyer. Which, the second? The second one about whether or not when a defendant consents to sequential trials, does that forego their right. Yes. So we just answer that question, period, in your opinion. That's the easiest way to resolve this case. And we think that the best, the clearest articulation of the rule that underlies a lot of this Court's double jeopardy precedent is that what the Court wants is for the defendant to have as much control as possible over the way the course of proceedings will play out. And so here Virginia has given him the right to force severance, and Justice Sotomayor is right, there is a particular scenario. How about if he had stood up and simply said, do you agree? You say, Judge, that's what the law says. Our position, Justice Sotomayor, would be if he doesn't object to it, then that is the same thing. He's gone ahead willingly with the two trials. Sotomayor, so he has no rights under Virginia law, is what you're saying? To retain his – he has to go to trial and suffer the prejudice to be able to retain his double jeopardy claims. To argue issue preclusion here and to not have this waiver argument, he would have to want to go to a joint trial. And if he wanted to do that, then the common law forced him into multiple trials. We would not argue any sort of waiver there. But as we pointed out on brief, there's good reasons why a defendant might want one trial in a case like this one. If he intends to testify or if he has some awareness that the evidence might come in under Rule 404b, for example, the jury is going to learn anyway in the context of that first trial that he is a prior felon or has some prior criminal history. And so there, there's no benefit to the defendant of having two trials. So the only reason, in a sense, it looks unfair in this case is because he's already made some litigation decisions that he's not going to testify or that he doesn't think the evidence is going to come in that way. And so once he's made some choices, he's going to either have one trial where he now has allowed this to come in to prove the felon in possession charge, or he goes to two trials, in which case our position is he's given up his right to argue that the second trial should be barred. And I want to come back to one thing Justice Breyer and Justice Kennedy raised earlier. This case does present an example of the State doing more than the Constitution requires in some sense. This Court has not said that introducing evidence of prior felony status is a constitutional violation. And where you have the Court of Appeals of Virginia interpreting a State judicial rule to have this severance package, it wouldn't be a stretch to think that if that necessarily takes away the Commonwealth's right to try a defendant for all of the charges that they have brought forward, that the State supreme court could revisit that judicial interpretation. Other States may have it as a statute or there may be a binding decision from the State's highest court, but you actually don't have that here. And so in that case, there is an unfortunate risk that what is a pro-criminal defendant measure may ultimately be retracted if defendants can't be seen as having given up their right to argue that the second trial is barred here. I would also just like to note for the Court that we also briefed the issue of if the Court finds that there was no waiver, the Court could go ahead and address whether the Petitioner carried his burden under Ashton-Yager of showing that an issue of ultimate fact was necessarily decided in this case that would have to be proven beyond a reasonable doubt. Ginsburg. That would be left over for remand. The only question we have is the waiver. Does he waive issue preclusion if he accepts severance? That's the question the Court granted certiorari on, Justice Ginsburg, but we understood the Court's precedent to mean that we can argue for an alternative basis for affirmance.  And that's why we didn't put an issue of ultimate fact that even if he could carry his burden and argue issue preclusion under Ashton, it would bar the second trial. Unless there are further questions, we would ask the Court to affirm. Thank you, counsel. Ms. Ross. Mr. Chief Justice, and may it please the Court. The Double Jeopardy Clause provides defendants with a right against multiple trials for the same offense, but it does not protect a defendant from the consequences of his voluntary litigation choices. Whereas here a defendant agrees to multiple trials on different charges in order to obtain a benefit, he cannot thereafter argue that his charges are, in fact, one offense for purposes of the Double Jeopardy Clause. Well, Ms. Ross, why not make sure that it actually is the defendant's choice? I mean, if it were, that would be one thing. So why isn't the best rule, a rule that says we're going to insist that some kind of colloquy takes place, where the judge says to the defendant, you know, if you want these two trials, here's the result of that. You lose the ability to argue issue preclusion. Why isn't that the best way to think about this kind of problem? So I think that's not the best way to think about this kind of problem, Your Honor, because the this Court's cases do not generally think about the double jeopardy right in those terms. So in Dinnitz, for example, this Court specifically held that a defendant's claim that he did not knowing and intelligently waive his right to have a double jeopardy claim was not for the right way to think about that issue, because in fact, the Court sort of presupposes that in these circumstances these are litigation decisions that may be difficult, that may be made sort of in. Kagan But your argument is all about voluntary choices on the part of the defendant, and you're essentially arguing a kind of waiver by conduct. And what I'm suggesting is if this is, you know, if this the way to think about this case is what is the defendant giving up when he agrees to a severance, then the obvious answer is tell the defendant what the consequences are and ask him whether he's willing to suffer them. Your Honor, that might be one way to deal with the problem. I think as Justice Kennedy and Justice Breyer were suggesting earlier, if that is the way that is adopted, it is likely that many States would choose not to go through that process, because again, this Court has made very clear that the introduction of evidence of a defendant's prior convictions is not itself a due process violation. So severance is not required as a matter of Federal law here. And so I think if States are required to go through a knowing involuntary waiver process, that then may be we think those waivers would be completely enforceable, but I take my friend's argument to be that they might not be, in fact. And so some defendants would in fact challenge those waivers, and the State would be opening itself up on the back end to at least litigation and inefficiency that it does not need to open itself up to. I also think that in this case, the most logical way to have looked at this agreement as an ex ante would have been for the defendant to know that he was giving up his right to challenge the fact that these were held in one proceeding. So you can look at this a few different ways. I think one of them is to think that this agreement was made so that the evidence of Petitioner's prior felony convictions would not come in at the first trial. But aside from that, nothing in this agreement was meant to or did by its terms say that the other options for potential outcomes that would have been possible in one trial would be off the table. So as some of the discussion earlier suggested, had this happened in one trial, Petitioner could have been convicted on all offenses, acquitted on all offenses, or some mix thereof, and nothing about saying I want to have two trials so that this other evidence doesn't come in logically suggests that he's retaining the option to keep one of those from happening. Well, but maybe the defendant understands that we in our Double Jeopardy clause have emphasized pretty strongly the value of acquittals, and that acquittals mean something in our system, and they preclude the government from doing certain things that are inconsistent with those acquittals. So I guess I don't understand why in the absence of a colloquy, and given the backdrop of Double Jeopardy law that focuses so much on not doing anything that's inconsistent with acquittals, the defendant would of course know that he was giving up his right to issue preclusion. Right, Your Honor, and I think that this goes back to some of the discussion that Justice Alito was having earlier, which is to say that the question in this case, I think, is best conceptualized as what right did defendant agree not to invoke, and what is he trying to invoke now. And I think that what this agreement said was that I'm going to have multiple trials, and so what the Double Jeopardy clause protects is multiple – against is multiple trials for the same offense. And so when Petitioner made that agreement, he was essentially saying, I'm not going to fight later about this is one – whether this is one offense or multiple. Well, but then you're saying when you say the Double Jeopardy clause protects multiple trials for the same offense, that's one thing that the Double Jeopardy clause protects. And another thing that the Double Jeopardy clause protects, and this is the difference between the claim preclusion aspect of it and the issue preclusion aspect of it, is the preservation of acquittals. And that's what is involved in this case. So, Your Honor, I would just note that the way that the Double Jeopardy clause protects acquittals is in two specific ways, and we lay this out in our papers. On the one hand, as everyone agrees here, following an acquittal, a defendant cannot be tried again, so he can't – on that particular claim, he cannot – the government cannot appeal, there cannot be another trial. Everyone agrees that's being respected here. The second way that this Court's decisions in the Double Jeopardy clause protect acquittals is by modifying the definition of the same offense for purposes of the multiple trials analysis. So what – the way that we give finality to an acquittal is by saying that, in fact, that acquitted offense was the same offense as another offense that is technically distinct for charging purposes. And in this case, when – Sotomayor, I'm sorry. What's technically distinct about having committed a robbery against two people? If you rob each person, those are distinct crimes. That's correct, Your Honor. But we don't permit you to try a person for robbing one person and then try the second There are different people involved. We don't let you try that second person, that second crime, if you've been acquitted. That's correct, Justice Sotomayor. And the reason why we don't allow you to try that second acquittal or that second offense is because, for purposes of the Double Jeopardy clause and for purposes of how we define the same offense, we say that in those circumstances, just as in Blockburger, we say that sometimes things that are technically distinct, meaning they're in different code sections, are the same offense because they have overlapping elements. Here, we say that they're the same offense because they have an issue of ultimate fact that the prosecution necessarily must prove in both cases. But there wouldn't be the same offense, the claim preclusion, in the Ass case, multiple victims. There's no claim preclusion when there's a second victim because it's a different party, but there certainly is issue preclusion because of what was necessarily determined in the first case. That's correct, Justice Ginsburg. And in Ashe, what happens is that the defendant cannot be tried for the second offense. Now, I take Petitioner to agree that if that were what he were arguing, he could not go forward with that. So what's the difference? That is, I misspoke. It's issue preclusion. That's how we prevent the government from prosecuting the second poker player robbery. Okay? Yes. Defense in the first case was I was in Chicago at the time. The jury accepted it. Okay? Now we're into the second case, and he was just as much in Chicago. All right. Now, you're saying he waived that when the only difference is that you separated the trial. That's all. They started trying both together, and now it's separate, but it ends up two separate trials. And what I think I'm having trouble grasping is why you should treat that any differently. And now your argument is because he's waived it by conduct. So Justice Kagan says, hey, he's waived it by conduct. Let's just be sure he waived it. Let him waive it expressly if he wants to waive it. Because after all, the Constitution says that no person shall be held, you know, for jeopardy twice or whatever it is. And now we see, okay, you get the point. You get the point. He's waiving a constitutional right, and therefore, why shouldn't it be express? And that's where I think I stop, because I want to know your answer. Certainly, Justice Breyer. So my answer is that the same argument could have been made, and I think in fact was made in Jeffers, that essentially in Jeffers, the defendant said, I want to be tried separately. And then later he said, well, actually, this is a lesser-includer offense and a greater offense, and that, under this Court's precedent, now means that I was actually charged with one offense, and so I should have had one trial. And this Court said, no, when you made the agreement to have two separate trials, you should have said at that point that these might be the same offense, and actually I want to have one trial. The Court said if there is a right in the background under the double jeopardy clause, it is the defendant's to invoke. And for that reason, I think that the same logic would apply here. If when Petitioner agreed to have two separate trials, he actually thought, well, later I would like to be able to bar or limit that second trial, because they're in fact for the same offense, that's my right to invoke law. Sotomayor, if the defendant got up and said, Virginia law requires separate trials, I won't – I want what the law gives me, I won't waive my double jeopardy rights, what then does the Court do and what then does the prosecutor do? May I answer, Your Honor? So if the defendant says, I will not waive and I want separate trials, I think then the prosecution and the court would have to decide sort of what happens going forward, and the prosecution in that case would have every reason to oppose severance, as I think that States and prosecutors might well do going forward if this case comes out that way. Thank you, counsel. Four minutes, Mr. Fisher. Fisher, thank you. I think I heard two separate ways to look at this case. Now I want to respond to each of them. So my friend from Virginia, in particular with Justice – in colloquy with Justice Kagan, says the only way issue preclusion works is that you invoke it at the outset of the second trial, and if you cannot bar the second trial at that point, it drops away and the right is gone. And if that is correct, then Judge Gorsuch's opinion for the Tenth Circuit and Wittig and all other Eighth Circuits we cite in footnote 2 of our reply brief across the Federal court system that all understand issue preclusion to depend on what happens in the second trial and to only bar a particular way of trying the case. And most importantly, as Judge Gorsuch put it for the Tenth Circuit, to sometimes force courts to wait and see what happens in that trial to see whether issue preclusion is violated. All of that has to be wrong and it would all be upended. Alito, and so I want to be clear about that. All we're arguing is that they cannot try the second case in a manner that would make Mr. Currier an aider, a better, or participant in the breaking and entering of which the jury convicted him. And so that would be a question of Virginia law, whether the stuff down by the river would have satisfied that.  Alito, why would it not? It proves all the elements of the offense. Well, the way the jury instructions were laid out in the case, it said participate in some way in the crimes of breaking and entering and the theft. And so whether handling the guns down by the river later would be participating in some way, and that would be an argument the parties could have. But the crucial point, Justice Alito, and my crucial point to the whole Court, is that issue preclusion does not necessarily bar a second trial. And the other side doesn't dispute that the test is inconsistency, and it simply cannot be inconsistent. If the government is right, then Wittig is wrong and all the other cases across the Federal courts are right. But I think what you've just said, I don't want to belabor the point, but it does seem to me inconsistent with the Second Circuit's opinion in Kramer that you relied on pretty heavily. I'll just say not at all. I just urge the Court to reread that opinion where exactly on all fours with that opinion. No, I read it. Sent it back down. Alito, they could have proven the second offense without making any reference to what had happened in the other offense. Which is why Judge Friendly does not bar a second trial and send certain cases back for retrial with the government simply not being able to introduce certain evidence. Mr. Fisher, what's your second point? Thank you. Thank you. My second point is that the other thing that, particularly the Solicitor General, the argument they make is that the government has a right, so to speak, to try all of its counts at once, just like in Powell. And so my answer to that is that argument simply is exactly the same argument the Court rejected in Yeager. In Yeager, the Court said if the government comes forward and says we want to try all these counts, but then through no fault of its own is unable to reach a verdict on particular counts, but a jury comes back and acquits in a manner that we can say resolves certain issues of ultimate fact against the prosecution, the squareholding of Yeager, which rejects the exact argument you just heard, is that issue preclusion applies in those circumstances. And there's a good reason why it applies. One way to think about issue preclusion and the Court's whole double jeopardy jurisprudence that we've been talking about today is to let the defendant have a fair trial and not be tried twice for the same thing, but also to allow the prosecution one full and fair opportunity to prove all of its allegations. And so in all the Jeffers-style cases, that's what the prosecution would be deprived of and why the Court has not allowed the double jeopardy clause to be invoked. In this case, just like in Yeager, the only thing that's being prevented is the prosecution having a second bite at the apple as to particular allegations. It can even, and I'll just return to my colloquy with Justice Alito when I, to conclude, it can even allow the second trial to go forward just simply in a manner that doesn't allow the prosecution functionally to try the defendant for the same offense twice. And so if you believe the postulates that inconsistency is the test and that Wittig and all the other cases we've cited are correct, it leads inequitably to our conclusion. And even if you don't believe that is enough, then the equities in the case and the competing interests and the right to the inviolacy of an acquittal should persuade you to reverse the judgment below. If there's any more questions, I'm happy to answer them. Roberts. Thank you, counsel. The case is submitted.